## PRICE v. CITY OF AKRON.

*Municipal corporations—Negligence—Water of creek diverted into conduit built by city—Liability to adjoining owner for overflow where conduit insufficient.*

Where a municipal corporation diverts the water of a creek into a conduit built by it in a street, and such conduit, although built pursuant to a plan adopted by the municipality, is, under prevailing conditions, insufficient in size, and the water from said creek, which did not theretofore flow onto adjoining property, rises from the manholes of said conduit during usual and ordinary heavy rains, and flows from the street onto such adjoining property, and inundates and injures same, and the city, after notice of the insufficiency of said conduit and consequent recurrence of injury, maintains said conduit, such city is liable to the owner of such adjoining property.

(Decided December 17, 1926.)

ERROR: Court of Appeals for Summit county.

*Mr. Jonathan Taylor,* and *Mr. Robert C. Ryder,* for plaintiff in error.

*Mr. H. M. Hagelbarger,* director of law; *Mr. C. T. Moore,* and *Mr. W. A. Kelly,* for defendant in error.

WASHBURN, J. Braxton Price sued the city of Akron to recover damages for injury to his premises, arising from the flooding of the same; he claiming that said flooding, at intervals over a period of four years, was caused by the negligent construction and maintenance by said city of a storm water sewer or conduit in the street upon which his premises abutted.

The trial court determined as a matter of law that the city was not liable for damage resulting from its alleged negligence in the construction of the sewer, and submitted to the jury the question whether or not the city was negligent in the maintenance of the sewer "in not cleaning it and keeping it clean," saying to the jury:

"So it results in this, that, if Mr. Price's place was damaged by flood, and if that flooding was directly caused by the stoppage of the sewer, and if the city knew that that sewer was stopped up, or, in the exercise of ordinary care, ought to have known it, and did not cause it to be cleaned out, then the city is liable."

The jury found in favor of the city. We are asked in this error proceeding to reverse the judgment which was entered upon such verdict, for the reason that under the circumstances of this case the trial court was not justified in determining that as a matter of law the city was not liable for its negligence in the plan and construction of the sewer, and that it was error to limit the liability of the city to damages for an injury caused solely by a stopping up of the conduit or drain, which the city, after notice, failed to remedy by cleaning out the sewer.

From the record it appears that Mr. Price owned a house and lot at the northwest corner of Bartges and Mallison streets, where the surface of the ground was low and flat. A sluggish creek flowed across Bartges street above Price's place, and then recrossed said street below Price's place; the distance between said two crossings being 919 feet.

The city, desiring to improve Bartges street, constructed in 1910 a surface water sewer or drain in

Bartges street between the two places where said creek crossed said street, thus conducting water of said creek, from the place where it crossed said street above Price's place, through a four-foot conduit or drain in Bartges street to the place where the creek crossed said street below his place; in other words, the course of the creek was changed so as to run along Bartges street for a distance of over 900 feet, and for that distance the creek was enclosed in a four-foot conduit.

There was very little fall between these two crossings, and the water flowing through the sewer coming from an open stream carried dirt and silt into the conduit, with the result that it very frequently became more or less stopped up, so that, during the four years preceding July 1, 1924, the time of the bringing of this suit, the city found it necessary to clean out the conduit after every considerable fall of rain; but, when the next hard rain came, either because the conduit was too small or because it was improperly designed or constructed, or was partially stopped up, the water came up out of the manholes and flowed upon Price's premises to a greater or less extent, depending upon the amount of rainfall.

Evidence was offered, some of which was admitted, tending to prove that before the conduit was constructed the water did not overflow on Price's premises, and that, soon after it was built, the water did overflow on his premises, and at times of heavy rains has continued to do so; the extent of such overflow increasing as the drainage area was improved with houses and paved streets and the filling up of lots.

Notwithstanding these facts, the trial judge said

to the jury: "The plaintiff's claim for negligence in the construction of this storm sewer is withdrawn from your consideration," and also, "If the stoppage of the sewer did not cause the overflowing of the water, or if the city on notice did clean it out, then the city is not liable, and your verdict should be for the defendant," and the trial judge refused to charge that it was not only the duty of the city to clean out the sewer after notice that it was stopped up, but was its duty to keep it clean after notice of successive stoppages, which always followed certain conditions.

The court, at the request of the city, properly charged the jury before argument that the city was not liable for simply failing to provide drainage for surface water, and that, if the sewer or drain was adequate for all ordinary purposes, the city was not liable for injury caused by an overflow due to an extraordinary and excessive rainfall, and that, if the injury would have been the same if there had been no sewer or drain, the city would not be liable.

The action of the trial judge in relieving the city from liability for an injury caused by the construction of a drain or conduit inadequate in size is attempted to be justified by the claim that providing a system of drainage required the exercise of deliberation, judgment, and discretion on the part of the city, and was in the nature of a judicial or governmental act, for the doing of which the city is exempt from liability.

A distinction is recognized between the exercise by a municipal corporation of powers in which it represents the government and the exercise of

powers relating to the development and for the benefit of the municipality and its inhabitants. When a municipality exercises a delegated sovereign power, it is exempt from responsibility, but, when it exercises a power given it for its benefit, it acts as a corporate legal entity, and in a private capacity, and is liable as an individual.

In an early case (*City of Dayton* v. *Pease,* 4 Ohio St., 80) this distinction is pointed out in an exhaustive and able opinion by Judge Ranney, in which the construction, repair, and maintenance of streets are held to belong to the latter class above referred to; no mention being made of any statute placing a duty on the municipality in reference to its streets. In that case Judge Ranney said, at page 100:

"But when a municipal corporation undertakes to execute its own prescribed regulations, by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed, that it is to be treated merely as a legal individual, and as such owing all the duties to private persons, and subject to all the liabilities that pertain to private corporations or individual citizens. To this class most clearly belongs the construction, repair, and maintenance of its streets."

"The power given a city to construct sewers, is not a power given for governmental purposes; nor is it a public municipal duty imposed upon the city, like that of keeping streets in repair, but it is a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private prop-

erty of the city; the corporation and its corpora-
tors—its citizens—are alone interested in them.''
*Cincinnati* v. *Cameron,* 33 Ohio St., 336, at page
367.

So far as this question is concerned, we can find
no satisfactory reason for saying that there is a
difference between the exercise by a municipality
of its powers to build and maintain sewers and the
exercise of its powers to construct and maintain
streets. The municipality is not liable for a mere
failure to provide streets or sewers, but it seems
to us that when it undertakes to provide either it
is not acting for the general government, but is
acting in its private capacity.

But, if it be assumed that a city in providing by
legislation a plan of drainage is acting in a govern-
mental capacity, and that it ''cannot be called to
account by the courts respecting its errors of judg-
ment in the plans of a public improvement for
drainage adopted by it'' (*City of Dayton* v. *Tay-
lor's Admr.,* 62 Ohio St., 11, 56 N. E., 480), it does
not appear by the record in the case at bar that
there was any legislative act determining the size
and character of the drain or conduit in question
or adopting any plan for such an improvement.
(*Merzweiler* v. *City of Akron,* 18 C. C. [N. S.], 138,
32 C. D., 643).

If a plan was adopted, the city could not claim
immunity, on the ground of an ''error in judg-
ment,'' for an act which diverted the water from
said creek and cast it upon Price's premises, when,
but for such act of the city, such water would have
flowed past his premises in the creek. That would
constitute a trespass, and it seems to us that a city

should not be relieved from liability for a trespass simply because it adopted a plan for such trespass.

According to 4 Dillon on Municipal Corporations (4 Ed.), Section 1739, the more modern authorities tend strongly to establish, and "rightly to establish, that a city may be liable on the ground of negligence in respect of public sewers, solely constructed and controlled by it, where by reason of their insufficient size, clearly demonstrated by experience, they result under ordinary conditions in overflowing the private property of adjoining or connecting owners with sewage, and that the principle of exemption from liability for defect or want of efficiency of plan does * * * not extend to such a case."

If I have a low lot which needs draining, and which adjoins a city street, and the city adopts a plan of drainage for that neighborhood, and constructs the same in said street, and the drain so provided fails to drain my lot, the city would not be liable to me; but, if the drain so provided by the city not only fails to drain my lot, but casts upon it water that otherwise would not have flowed or reached my lot, and thus adds to the depth of water standing on my lot, and the city has notice that such drainage system so operates to injure and damage my property, it becomes its ministerial duty to remedy the situation so as to discontinue such direct invasion of my rights, and it is liable for a negligent failure to perform that ministerial duty.

In 1840 suit was brought against a municipality to recover damages for an injury caused by cutting ditches and water courses in such a manner as to

cause the water to overflow and wash away plaintiff's land. The city was held liable, and in the opinion the following language was used:

"That the rights of one should be so used as not to impair the rights of another, is a principle of morals, which, from very remote ages, has been recognized as a maxim of law. If an individual, exercising his lawful powers, commit an injury, the action on the case is the familiar remedy; if a corporation, acting within the scope of its authority, should work wrong to another, the same principle of ethics demands of them to repair it, and no reason occurs to the court why the same remedy should not be applied to compel justice from them." *Rhodes* v. *City of Cleveland,* 10 Ohio, 159, at pages 160, 161, 36 Am. Dec., 82.

Suit was brought to recover damages for an injury caused by the filling up of streets by the city so as to cause established drains to become worthless and water to set back on adjacent property. The court in disposing of the case used this language:

"We are of opinion that the law of the land is, and ought to be, that for injuries resulting to the use of the property by reason of the turning of the water upon the property by these embankments, which otherwise would flow off, and from which injuries accrue to her in the use of the property, she is entitled to recover." *City of Toledo* v. *Lewis,* 9 C. D., 451, 17 C. C., 588, affirmed, no report, 52 Ohio St., 624, 44 N. E., 1133.

See, also, *McBride* v. *City of Akron,* 6 C. D., 739, 12 C. C., 610; *Merzweiler* v. *City of Akron,* 18 C. C., (N. S.), 138, 32 C. D., 643.

Our conclusion and holding is that where, in Ohio, a municipal corporation diverts the water of a creek into a conduit built by it in a street, and such conduit, although built pursuant to a plan adopted by the municipality, is, under prevailing conditions, insufficient in size, and the water from said creek, which did not theretofore flow onto adjoining property, rises from the manholes of said conduit during usual and ordinarily heavy rains, and flows from the street onto such adjoining property, and inundates and injures same, and the city, after notice of the insufficiency of said conduit and consequent recurrence of injury, maintains said conduit, such city is liable to the owner of such adjoining property, and, of course, under such conditions, if the injury was caused by the negligent failure of the city to keep such conduit free from obstruction, it having notice that the conduit was not so constructed as to clean itself and was frequently obstructed, the city would be liable.

For error in the charge of the court, the judgment is reversed and the cause remanded.

*Judgment reversed.*

PARDEE, P. J., and FUNK, J., concur.