NAGY *v.* CITY OF AKRON.

(Decided December 23, 1927.)

*Messrs. Lahrmer & Hadley,* for plaintiff in error.
*Mr. Wm. H. Knowlton,* director of law, and *Mr. F. E. Renkert,* for defendant in error.

FUNK, J.   Plaintiff in error commenced his action in the common pleas court against the city of Akron to recover damages on two causes of action: First, for alleged damages resulting from the emptying of a sanitary sewer into a county ditch running along the north side of his land; and, second, for damages to his crops for three successive years, caused by water overflowing his land, alleged to be the result of the city emptying a storm water sewer into a county ditch, known as the Roush lateral, which passed through the central part of his lands.

After the jury had been impaneled, statements of counsel made, and the first witness called had testi-

fied in part, a question arose concerning the admission of evidence which involved the construction of what the petition alleged concerning the area drained and the quantity of water coming into said ditch through said storm sewer. At this time counsel for plaintiff stated in open court that it was not claimed that the city had enlarged the drainage area that emptied into said county ditch through said storm water sewer, but that it was claimed that the sewer brought more water than would have come under natural circumstances; that is, that water which would have seeped into the earth, or evaporated before it reached the county ditch, was now emptied into the ditch, and that the flow of the water had been greatly accelerated — that is, the water came much faster and quicker than it naturally would have come, and thereby overflowed the county ditch and destroyed plaintiff's crops, which it did not do prior to the construction of said sewer.

Thereupon counsel for the city demurred to the alleged second cause of action in the petition, on the ground that it did not state a cause of action, and asked the court to refuse to hear any further evidence on that cause of action; it being the contention of counsel for the city "that, as long as the drainage area was not increased, the fact that the flow of water was increased and the volume increased due to improvement, it is not liable for the damage caused to Mr. Nagy."

After a very long argument by counsel on both sides, citing many authorities, including various Ohio decisions, the court, under the pleadings and evidence thus far adduced, and the admissions of counsel, sustained this demurrer. Plaintiff not

wishing to plead further, judgment was rendered
in favor of the city on the demurrer to the second
cause of action, and the case proceeded to trial only
on the first cause of action, with verdict and judg-
ment for plaintiff. That branch of the case is now
closed. The case is here on petition in error, claim-
ing that the court erred in sustaining the demurrer
to the second cause of action.

The record further shows that this storm water
sewer is about 1½ miles in length; that it is 12
inches in diameter at the beginning point, and grad-
ually increases in size until it is 63 inches in diameter
at its outlet, where it empties into the said Roush
lateral at its beginning point, so that the Roush
lateral becomes a continuation of said sewer in the
form of an open ditch or water course. It is ad-
mitted that the sewer enters said lateral at a point
about 1,000 feet outside of the corporate limits of
the city of Akron; that said lateral was established
long enough to become a water course under our
Code; and that the surface water from nearly 400
acres in said city is collected and drained into said
sewer.

The question presented by the pleadings, admis-
sions of counsel, and the evidence at the time said
demurrer was sustained, is whether or not a muni-
cipality, as long as the drainage area is not in-
creased, may collect its surface water into a trunk
line sewer and empty it into a natural water course
on the lower lands of another outside its corporate
limits — which water course naturally drains the
higher land of the municipality, but does not extend
into, through, or border on, it — without regard to
the capacity of the water course; it being conceded,
so far as this record is concerned, that the nearest

point of the Roush lateral to the corporate limits of said city is about 1,000 feet.

Counsel on both sides have been diligent and have cited many authorities outside of the state as well as those in Ohio. However, it will be observed that the rule concerning surface water varies in different states, and much depends upon whether the civil law or common law rule has been adopted in the particular state. The civil law rule is followed in this state, and, in considering the decisions of other states upon the question of surface water rights and obligations, attention should be given as to which rule has been followed in the state in which the decision was rendered. *Crawford* v. *Rambo*, 44 Ohio St., 279, at pages 283 and 284, 7 N. E., 429.

The rule is well established in Ohio that the owner of land cannot, by artificial means, divert the natural flow of the surface water off his land, nor can he, by an embankment or otherwise, divert the natural flow of the surface water off the higher land in a manner different from its natural flow onto his land, without liability therefor. *Butler* v. *Peck*, 16 Ohio St., 334, 88 Am. Dec., 452; *Tootle* v. *Clifton*, 22 Ohio St., 247, 10 Am. Rep., 732.

A careful examination of the text-books and decisions shows that, where a water course, or well-defined channel, or natural depression, exists on the land of the upper proprietor, he may collect the surface water on his land into sewers or drains, and discharge it, without liability, into such water course or natural channel or depression *on his own land;* but, if there is no such water course or natural channel or depression on his land, he cannot so collect the surface water or divert its natural flow onto the land of the lower owner. 27 Ruling Case Law,

p. 1151, Section 79 *et seq.;* 3 Farnham on Waters and Water Rights, 2618, Section 891; 40 Cyc., pp. 645, 646, 647, 648. However, the decisions in Ohio so far seem to have limited this right only to "water courses."

The case of *Mason* v. *Commrs. of Fulton County,* 80 Ohio St., 151, 88 N. E., 401, 24 L. R. A. (N. S.), 903, 131 Am. St. Rep., 689, is cited by counsel on both sides in support of their respective positions. The syllabus in this case is as follows:

"A landowner may, in the reasonable use of his land, drain the surface water from it into its natural outlet, a water course, upon his own land, and thus increase the volume and accelerate the flow of water without incurring liability for damages to owners of lower lands; and his land is not subject to assessment for the cost of a ditch, or an improvement, that will not benefit its drainage but is constructed to prevent overflow from the water course or to benefit the drainage of servient lands."

It will be observed that this syllabus limits the right to drain surface water "in the reasonable use of his land * * * into its natural outlet, a water course, *upon his own land.*"

Counsel for the city place much stress on *City of Hamilton* v. *Ashbrook,* 62 Ohio St., 511, 57 N. E., 239. While the syllabus in this case does not definitely limit the non-liability of the city to a natural water course upon its own land, the facts in the case disclose that it was a natural water course running through said city, and that the case pertained to alleged liability for damage to land lying within the city, caused by the backing up of water from the Miami river, into which the water course passing

through the municipality emptied, thereby causing the levees constructed by the city to break; so that the situation in that case is entirely different from that in the instant case, and, as a syllabus should always be read in connection with the facts in the case, it cannot be said that the *Ashbrook case* is inconsistent with the holding in the *Mason case,* or with the general rule as to surface water as between individuals.

It being clear that an individual cannot, by artificial means, divert surface water from the natural flow thereof, either from coming on or going off his land, is the rule any different as to a municipality between it and the owner of land located outside such municipality?

The rule that "municipal corporations are liable like individuals for injuries done, although the act was not beyond their lawful powers," has been so carefully considered by the courts of Ohio in so many opinions, and so long established in this state, that it has become a rule of law that should not be changed except by legislative enactment.

This rule was first announced in this state by Judge Lane in *Rhodes* v. *Cleveland,* 10 Ohio, 159, 36 Am. Dec., 82, in a forceful opinion, in which he states:

"I do not look so much for precedents as to the following out of incontestable principles." And: "That the rights of one should be so used as not to impair the rights of another, is a principle of morals, which, from very remote ages, has been recognized as a maxim of law. If an individual, exercising his lawful powers, commit an injury, the action on the case is the familiar remedy; if a corporation, acting

within the scope of its authority, should work wrong to another, the same principle of ethics demands of them to repair it, and no reason occurs to the court why the same remedy should not be applied to compel justice from them."

That case was reviewed and followed in *McCombs* v. *Town Council of Akron,* 15 Ohio, 474, in another able opinion, by Judge Read, in which he says, in commenting on the opinion in above case, that Judge Lane, "with admirable good sense and strength of reason," declared this rule "with unanswerable force, upon the most solid foundations of reason, morality, and law," and, although Judge Birchard dissented, he said this rule is "one that justice seemed to demand," and that he had "no desire to shake its authority," but insisted that it had no application to the facts then under consideration. As the latter case reversed the lower court, it was retried, and the rule again considered by the Supreme Court in *Town Council of Akron* v. *McComb,* 18 Ohio, 229, 51 Am. Dec., 453, where the principle was again adhered to. These cases have since been cited and followed many times with approval by the courts of Ohio. See, also, *Keating* v. *City of Cincinnati,* 38 Ohio St., 141, at page 148, 43 Am. Rep., 421; *Evers* v. *City of Akron,* 23 C. C. (N. S.), 168, 34 C. D., 187; *Price* v. *City of Akron,* 23 Ohio App., 513, 155 N. E., 490; 9 Ruling Case Law, 684, Section 78 *et seq.*

If the city desired to empty said storm water into said Roush lateral without liability to the owners of land injured by the overflow of water from said lateral, caused by the increased amount and accelerated flow of the water from said sewer and the insufficiency of the capacity of said lateral to carry

off such water, it should have obtained the right to do so — either by contract or by some appropriate legal proceeding, such as under the drainage laws of the state or the right of eminent domain. We are therefore unanimously of the opinion that the court erred in sustaining the demurrer to the second cause of action.

During the argument of counsel in this court, it was suggested by counsel for the city that they had some information that the Roush lateral was divided, at the point where the sewer entered it, into two diverging ditches, both of which extended into the corporate limits of Akron, into or through the area drained, and that the sewer was placed between these two ditches and collected the water of both into the sewer instead of into two open ditches constructed as a part of the Roush lateral.

That the Roush lateral was so extended into the area drained by the sewer by two diverging branches is not disclosed by the record, and we have no such case before us. So far as the record shows, the sewer emptied into the Roush lateral at its beginning point about 1,000 feet from the corporate limits of the city, and said lateral neither extended into, through, nor bordered on, the corporate limits of the city.

The judgment of the court below is therefore reversed as to the second cause of action, and the cause remanded on said second cause of action to the common pleas court for further proceedings according to law.

*Judgment reversed and cause remanded.*

WASHBURN, P. J., and PARDEE, J., concur.