12

**SPIELBERGER et, Plaintiffs, v. TWELFTH DAYTON BUILDERS CORP. et, Defendants.**

Common Pleas Court, Montgomery County.

No. 108944.

Froikin, Zipperstein & Saul, Dayton, for plaintiff Julius L. Spielberger.

Pickrel, Schaeffer & Ebeling, Dayton, for plaintiffs John S. Davis, Sr., John S. Davis, Jr. and Davis Oil Co.

Cowden, Pfarrer, Crew & Becker, Dayton, for defendants.

## OPINION

By THOMAS, J.:

Following the promulgation by the Court of its decision dated September 15, 1956, the Plaintiffs filed a request that the Court state in writing its conclusions of fact found separately from the conclusions of law.

Upon consideration of the Amended Petition of the Plaintiffs, the Joint Answer of the Defendants, Sixth Dayton Builders Corp., First Ohio Builders, Inc., and Second Ohio Builders, Inc. (Twelfth Dayton Builders Corp. having been heretofore dismissed as a party defendant), the evidence, exhibits, stipulations and briefs of counsel, the Court finds, as conclusions of fact, that:

(1) The Plaintiff, Julius L. Spielberger, is the owner of two separate but adjoining parcels of real estate referred to as Tracts "B" and "C" as described in the Amended Petition, and comprising approximately forty (40) acres, more or less, located in part in the City of Dayton and in part in Madison Township, Montgomery County, Ohio, upon which he constructed and now operates a trailer park known as Trailer Village. Gettysburg Avenue, a public thoroughfare of the City of Dayton, running in a generally north and south direction, abuts such lands on the East;

(2) The Plaintiffs John S. Davis, Sr., and John S. Davis, Jr., are the joint owners of a tract of land known as Lot numbered 67674 in the City of Dayton, comprising approximately forty-eight and one-half (48½) acres and lying East of the lands of Spielberger and abutting Gettysburg Avenue;

(3) The Plaintiff Davis Oil Company is the lessee of a portion of the lands of the Plaintiffs John S. Davis, Sr., and John S. Davis, Jr., upon which leased lands it operates a filling station at the southeast corner of the intersection of Gettysburg and Western Avenues;

(4) The Defendants Sixth Dayton Builders Corp., First Ohio Builders, Inc., and Second Ohio Builders, Inc. are developers of lands and builders of houses, and as such have platted and developed for residential purposes certain lands in Madison Township, the east line of such lands being approximately 2300 feet west of the corporation line of the City of Dayton, and southwest of the lands of Plaintiffs Spielberger, Davis Sr. and Davis Jr., such plats being known as—

Sixth Dayton Builders Plat, Section 2, recorded July 14, 1955, in plat Book NN, page 40; First Ohio Builders Plat, Section 1, recorded July 14, 1955, in Plat Book NN, page 41; First Ohio Builders Plat, Section 2, recorded July 14, 1955, in Plat Book NN, page 42; Second Ohio Builders Plat, Section 1, recorded July 14, 1955, in Plat Book NN, page 43, of the Plat Records of Montgomery County, Ohio; the plats being developed by the three Defendants contain a total of 29.873 acres east of Gunther Road and are a part of the residential development known as "Townview";

(5) The residential plats improved and developed by the three Defendant Corporations are higher than the lands of the Plaintiffs; are located within the same watershed; and the natural drainage of the lands is to and through the lands of intervening property owners and the lands of the Plaintiffs;

(6) Prior to the acquisition, development and improvement by the Defendants of the lands for residential purposes, two natural drainage ditches existed thereon with a natural flow of water from west to east; one of such natural drainage ditches leaves the Townview area and the lands of the Defendant Corporations from the northerly boundary, and the other of said natural drainage ditches leaves the Townview area and the lands of the Defendant Corporations from the easterly boundary; both of said ditches being joined and converging on lands of intervening property owners between the Townview area and the lands of the Plaintiff Spielberger; and the single natural drainage ditch formed by the convergence of the two natural drainage ditches runs over and through the lands of the Plaintiff Spielberger, crossing Gettysburg Avenue by means of a pipe conduit and thence through the lands of the Plaintiffs Davis Sr. and Jr.;

(7) The Defendant Corporations have undertaken the construction of public utilities on such platted lands, including the establishment of stormwater drainage systems for the purpose of draining surface water that naturally drains to, upon and from such platted lands, such stormwater drainage systems have been constructed conformably with the requirements and specifications of the City of Dayton and have been so constructed as to lie within the channels of drainage established by nature; and all the surface water collected and carried by such drainage systems is kept within the pre-existing natural drainage channels;

(8) There has been no diversion of any water on, to or from the lands of the Defendant Corporations; the storm sewers constructed by the Defendants discharge their waters on the lands of the Defendant Corporations and into the pre-existing natural drainage channel outlets on the lands of the Defendant Corporations and into the pre-existing natural drainage ditches flowing from the lands of the Defendant Corporations on, to and through the lands of intervening owners, and then on, to and through the lands of the Plaintiffs. The terminal end of the stormwater sewer emptying into the natural drainage channel outlet at the northerly boundary is sixty (60) inches in diameter and the terminal end of the stormwater sewer emptying into the natural drainage channel outlet at the easterly boundary is thirty-six (36) inches in diameter;

(9) Other corporations, not parties to this suit but affiliated with the three Defendants, have platted and developed and are in the process of developing and improving for residential purposes lands in the same watershed, lying to the west of Gunther Road, and higher than the lands developed by the three Defendants, and have constructed stormwater drainage systems thereon which empty into and for purposes of draining the area of the watershed are extensions of the systems established by the Defendants east of Gunther road;

(10) The names of the affiliated but non-defendant corporations

which have platted and developed lands in the same watershed, west of Gunther Road, the name of the plats and the recording data follow:

Fourth Ohio Builders, Inc. Sec. 401 Recorded in Plat Book NN, p. 73
Fourth Ohio Builders, Inc. Sec. 402 Recorded in Plat Book PP, p 55
Fifth Ohio Builders, Inc. Sec. 501 Recorded in Plat Book NN, p 74
Fifth Ohio Builders, Inc. Sec. 502 Recorded in Plat Book PP, p 54
Sixth Ohio Builders, Inc. Sec. 601 Recorded in Plat Book NN, p 75
Sixth Ohio Builders, Inc. Sec. 602 Recorded in Plat Book PP, p 53
Seventh Ohio Builders, Inc. Sec. 701 Recorded in Plat Book OO, p 54
Seventh Ohio Builders, Inc. Sec. 702 Recorded in Plat Book PP, p 56
Eighth Ohio Builders, Inc. Sec. 801 Recorded in Plat Book OO, p 55
Eighth Ohio Builders, Inc. Sec. 802 Recorded in Plat Book OO, p 5
Ninth Ohio Builders, Inc. Sec. 901 Recorded in Plat Book OO, p 6
Ninth Ohio Builders, Section 902 located immediately North of Gardendale Avenue one lot depth East and West of the northward extension of Graystone Drive,

Tenth Ohio Builders, located immediately West and South of the extension of Gardendale Avenue and in the Southwest corner of tract belonging to Katherine L. Richards recorded in Deed Book 1629, page 378 in the Deed Records of Montgomery County, Ohio.

These plats were approved and recorded during the period August 8, 1955 to January 6, 1956.

(11) The stormwater drainage systems constructed to the west of Gunther Road also were constructed conformably with the requirements and specifications of the City of Dayton; they have been so constructed as to lie within pre-existing natural drainage channels; all surface water collected and carried by such systems is kept within the pre-existing channels; and there has been no diversion of any water on, to or from the lands lying to the west of Gunther Road on or to the lands east of Gunther Road;

(12) Good engineering practice requires that in the design and location of stormwater drainage systems the amount of water which may be expected to fall and flow onto the lands being developed be first determined and on the assumption that the upper or tributary lands have been or will be fully developed and improved. The stormwater drainage systems established by the Defendants were designed and located in accordance with that principle. The thirty-six (36) inch system established by the Defendants was designed to serve an area of approximately 48.1 acres, measured "upstream" from the east line of Townview, and the sixty (60) inch system to serve an area of approximately 170.64 acres, measured "upstream" from the north line, or a total of 218.86 acres in the same watershed. The stormwater systems established by the Defendants are reasonable and adequate for the purpose and are not too large;

(13) In the improvement and development of lands for residential purposes, an increase of run-off from two-tenths in its previous state as ordinary farm lands, to four-tenths as developed residential lands, is normal and to be expected. Hence, the amount of surface water discharged from the stormwater systems established by the Defendants into the pre-existing natural drainage channels will increase 100% over the

amount previously discharged into such channels prior to the improvement and development of such lands by the Defendants;

(14) The Defendants have not acted in a negligent or unreasonable manner in the improvement and development of their lands and the construction of the stormwater drainage systems;

(15) The use and development of the lands of the Defendants, for residential purposes, is a reasonable and proper use;

(16) Contrary to nature, the drainage ditch as it crosses the land of Spielberger has less capacity, by one-third, than it has upstream crossing the lands intervening between the Spielberger lands and the lands of the Defendants, and was inadequate to care for the surface water from the upper lands before any improvements were made on the lands of the Defendants;

(17) The drainage ditch enters the land of Spielberger at the southwest corner of Trailer Village, then runs along the west line in a northerly direction for a distance of approximately 485 feet at which point there is a sharp turn to the east of more than ninety degrees; the ditch then runs east, along the north line of Trailer Village for approximately 1220 feet to Gettysburg Avenue. During the period 1911 to 1951 prior to the acquisition of the lands by Spielberger, the waters of the ditch would periodically overflow the banks and break the east bank running north along the west line and the south bank running east along the north line. The banks of the ditch, which are higher than the land on each side, were built up and the channel narrowed by the removal of silt and other materials from the bottom and placed along the sides. At some points the bottom of the channel is higher than the land on each side. When the water overflowed the ditch and broke through the east bank, it then flowed with the natural grade east and north from the points of overflow or break, parallel to and south of the south bank to a point near Gettysburg Avenue on the east. The lands were low south of the ditch near Gettysburg Avenue, and the overflow water would lie in a low spot covering approximately one acre. This low spot was filled by Spielberger after he acquired the land in 1951. The east bank of the ditch, along the west line of Trailer Village, broke through in 1951 and 1952, resulting in flooding of the lands. The bank was rebuilt by Spielberger;

(18) Prior to the development of the lands of the defendants, there existed and still exists, an unnatural barrier or "bottleneck" to the flow of surface water, the forty-eight (48) inch pipe conduit under Gettysburg Avenue, where the surface water leaves the land of Spielberger; this pipe conduit has but one-half (½) the capacity of the drainage ditch crossing the lands of Spielberger; during heavy rains said barrier causes surface water to back up and flow over the lands of Spielberger and onto Gettysburg Avenue, resulting in an accumulation of water at the intersection of Western Avenue and the filling station of Davis Oil Company;

(19) The lands of the Plaintiffs Davis Sr. and Davis Jr., during their ownership, have been filled and raised on each side of the drainage ditch running through their lands, and the capacity of the ditch has been lessened;

(20) The lands of each of the Plaintiffs were subject to flooding

from the waters of the drainage ditch crossing their lands prior to the development of Townview;

(21) The facts that the capacity of the drainage ditch as it crosses the lands of Spielberger is, contrary to nature, of less capacity by one-third than is the same ditch before it enters such lands; that the conduit pipe crossing Gettysburg Avenue is inadequate for the purpose and acts as a barrier or bottleneck to the flow of water; and that the lands of Davis Senior and Junior have been filled and raised on each side of the drainage ditch; are, each of them, factors which contribute in substantial measure to the conditions of which the Plaintiffs now complain;

(22) It would have been possible from the engineering viewpoint for the Defendants to have constructed an artificial connection from the two natural drainage ditches to other drainage ditches to the north and south and to channel the surface waters away from the lands of the Plaintiff; however, to do so would result in a diversion of such waters from the natural channels and watershed into other (unnatural) watersheds and would not be consonant with good engineering practices or procedures;

(23) This action was commenced on October 19, 1955, the date of filing of the Petition. The Plats of the Defendants were submitted to and received preliminary approval by the Planning Commission of the City of Dayton, May 14, 1955, and final approval July 14, 1955. After the improvement plans, lay-out of utilities, including storm sewers, were finally approved, bonds submitted and construction permits issued, construction work commenced on July 14, 1955. By October 19, 1955, the Defendants had expended between $1,800,000.00 and $1,900,000,00. On January 17, 1956, one hundred seventy-four (174) homes had been completed on the plats east of Gunther Road (including construction by Twelfth Dayton) of which 90% to 95% were under construction on October 19, 1955. All of these homes had been sold prior to October 19, 1955, and thirty to fifty had been conveyed by that date. By January 11, 1956, one hundred fifty-nine (159) had been sold and conveyed prior to January 11, 1956, and occupied by the new owners. The total investment for lands, expenses of construction and the development of the five (5) plats east of Gunther Road, as at January 12, 1956, was $1,896,031.40; and as at the same date for the same purposes, the total investment in all of Townview amounted to $5,412,673.51.

And, as conclusions of law in this case, based on the foregoing conclusions of fact, the Court finds that:

(A) The lands of the Plaintiffs being lower than the lands of the Defendants and in the same watershed, are under a natural servitude to receive such waters as flow naturally to and upon them from the higher lands. This right which the Defendants have, to require the Plaintiffs to receive the surface waters that naturally drain to the lower lands, is a right incident to the ownership of the higher lands and a part of the property of such ownership; (Blue v. Wentz, 54 Oh St 247)

(B) The Defendants have the right to develop and impove their lands for residential purposes. In so doing Defendants have acted reasonably and without negligence. Even if it be assumed that such rightful and reasonable use of the lands of the defendants has had or will

have some effect so as to diminish the value of the lands of the Plaintiffs, or to prevent such lands being used with the comfort which otherwise might have been anticipated, this is damnum absque injuria, as to which the law cannot interfere (Ratcliffe v. Indian Hill Acres, Inc., 93 Oh Ap 231, 50 O. O. 512; Letts v. Kessler, 54 Oh St 73; 1 Am. Jur. 505, Sec. 3; 1 O. Jur. (2) 381, Sec. 4);

(C) The Defendants in the reasonable use of their lands, i. e., the development of such lands for residential purposes and the establishment of the stormwater drainage systems thereon, have not invaded any of the rights of the Plaintiffs. Since no rights have been invaded Plaintiffs are not entitled to injunctive relief; (Railroad Co. v. Bingham, 29 Oh St 364; Letts v. Kessler, supra)

(D) The Defendants, in the reasonable use of their lands, i. e., the development and improvement of their lands for residential purposes, may drain the surface water from it into the natural outlets, the two natural drainage ditches which existed prior to such development and improvement, and thus increase the volume and accelerate the flow of water without incurring liability to the Plaintiffs as the owners of the lower lands; (Mason v. Fulton County Commrs., 80 Oh St 151; City of Hamilton v. Ashbrook, 62 Oh St 511)

(E) It is only where the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner that the latter may recover for the damage thereby inflicted.

In view of the facts that the Defendants have not been guilty of any negligence in the manner of improvements of the upper lands, or the establishment of the stormwater drainage systems thereon; that there has been no diversion of the surface waters on, to or from such upper lands; and that such stormwater systems discharge the waters through the pre-existing natural drainage outlets, the Plaintiffs, as the owners of the lower, servient lands, have no right of redress for injury to their lands caused by the improvements made by the Defendants for the purpose of draining and protecting the lands above, even though the channel of the drainage ditch crossing the lands of the Plaintiffs is inadequate to accommodate the increased flow of water resulting from the improvements; (Mason v. Fulton County Commrs., 80 Oh St 151; City of Hamilton v. Ashbrook, 62 Oh St 511; Blue v. Wentz, 54 Oh St 247)

(F) The rights of the parties being clearly defined and established by law, and the Plaintiffs having failed to establish their right to injunctive relief, the holding and judgment of the Court must be in favor of the Defendants and against the Plaintiffs.

These separate findings of fact and conclusions of law will be journalized by the clerk.