The motion of the state of Ohio to dismiss the appeal is, therefore, sustained.

*Motion sustained.*

PETREE, P. J., and MILLER, J., concur.

BEY ET AL., APPELLEES, *v.* WRIGHT PLACE, INC., ET AL., APPELLANTS.

(No. 4635—Decided December 26, 1956.)

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellees.

*Mr. James M. Hinton,* for appellants.

HUNSICKER, J. This is an appeal on questions of law from a judgment rendered on a verdict of a jury in the Common Pleas Court of Summit County, Ohio.

The appellees are Joseph Bey and his wife, Ellen Bey, herein called "Bey." The appellants are Wright Place, Inc., an Ohio corporation, herein called "Wright Place," and John S. Wright and his wife, Myrtle I. Wright, herein called "Wright."

Bey owns some farm land lying south of Wright Place, which is a motel of 56 units, a restaurant-saloon and gas station, located on the south side of Route 224, east of Akron, in Summit County, Ohio.

Route 224 is a highly travelled road, running east and west. The contour of the land in the vicinity of these properties and along the road, shows the road (Rt. 224) sloping from west to east in front of the Wright Place. The land north and south of Wright Place slopes in such a manner that surface water runs from north to south. There are two road ditches, one on each side along Route 224. (In front of Wright Place the ditch is tiled, and the tile is covered with earth.) East of Wright Place, the north roadside ditch crosses under the road, and then both roadside ditches proceed to a county or township ditch that goes across the Bey land to an outlet a great distance from the locality herein.

Surface water, when it rains, runs from Wright Place

south over the Bey lands and then into this ditch. There never was a watercourse, natural waterway or other well defined channel carrying this surface water from Wright Place over the Bey lands, although such rains did cause a swale or depression to develop, over which such surface waters flowed in season.

It was in 1940 that Wright began the operation of a motel and restaurant called Wright Place, and it was then that he put in a septic tank and leach bed, with an outlet into the swale or depression that carried, in wet or rainy seasons, the surface water over his land onto the Bey lands.

The motel units, restaurant-saloon and gas station are all fully equipped with toilets, and in addition there is waste drainage from the shower baths and other facilities which are a part of the Wright Place.

The corporation, Wright Place, Inc., ran the saloon and restaurant from 1942 onward, part of the time under lease from Wright, and part of the time under sublease from one Hollister; Hollister also operated the tourist cabins under lease from Wright; and Wright, at various times along with one Williams, operated the gas service station, and the other business, until 1951, when Wright sold the westerly seven acres to Wright Place, which corporation then operated the entire business.

Wright moved to a brick home which he had built on a 3-acre tract just east of the business. It is from this home of Wright that a drain carrying his sewage and waste water ran into the septic tank, and then to a 24-inch tile that ran across Wright Place and emptied onto Bey at the northern boundary of his lands.

There was some 6-inch drain tile to carry off surface waters imbedded in the soil on the Wright and Bey lands. This tile was the kind used by farmers to drain lands they wished to use efficiently for agricultural purposes. It was undoubtedly used for that purpose on these lands, although, at the time of the matters herein, this tile drain was clogged with dirt.

Wright, in 1945, after several additions to Wright Place, put a 24-inch tile along this swale or depression to the north edge of the Bey lands. Into this 24-inch tile, Wright drained the waste waters from Wright Place, including those passing

through the septic tank and leach bed, and also those waste waters and effluent from his own home adjoining Wright Place.

From the evidence in this case, it is clear that Wright and Wright Place, by the use of several deep wells, brought, to the surface, water which they used and furnished to their guests in the operation of this extensive motel, restaurant-tavern and gas station business; which waters, after use, and after passing through the septic tank and when still impregnated with feces, soap, waste and oils, were discharged through the 24-inch tile onto the lands of Bey, where the heavily odorous water became partially stagnant. As some of this stagnant water began to run off toward the county or township ditch, it seeped into the adjoining Bey lands, causing them to become soggy, foul smelling and offensive to people on and near such property.

Bey then filed an action for damages, against Wright and Wright Place, which he claimed to have sustained between September 23, 1949, and September 22, 1953, the date the action was filed. After judgment was entered in favor of Bey, an appeal was lodged in this court by Wright and Wright Place.

There are nine assignments of error, which we need not set out verbatim, for the principal questions which we have to consider are:

1. May the occupier of land whose natural surface drainage is onto the land of another, cast, along with such surface waters, and in addition thereto, sewage, waste waters and odorous effluent onto the lands of such other?

2. May, under the circumstances in this case, the parties herein be jointly sued and a joint judgment be then rendered against the parties?

3. Did the trial court commit error in refusing to give certain requested charges before oral argument?

4. Did the trial court err, to the prejudice of the appellants, in the general charge to the jury?

It is not necessary in this case to re-examine the question of a prescriptive right by one land owner to cast sewage onto the land of another, since there is no evidence in this case which indicates that sewage waste waters or other such waters were cast upon the lands herein a sufficient length of time to raise a question of prescriptive right.

However, the answer to the question of prescriptive right set out above, and the answer to question number one, have been given by this court in the case of *Vian* v. *Sheffield Building & Development Co.*, 85 Ohio App., 191, 88 N. E. (2d), 410. We adhere to the rule there established, that "One may not obtain by prescription, or otherwise than by purchase, a right to cast sewage upon the lands of another without his consent."

Of course, the lower owner must accept the natural surface drainage; but additional water which has, as here, been pumped from deep wells, then used for toilets, washrooms, restaurant, and other business uses, is not a part of the surface water which such lower owner must accept from the owner of higher ground.

There was no watercourse over Wright Place and onto Bey land, for a watercourse is defined, in paragraph three of the syllabus of *East Bay Sporting Club* v. *Miller,* 118 Ohio St., 360, 161 N. E., 12, as "a stream usually flowing in a particular direction in a definite channel having a bed, banks or sides and discharging into some other stream or body of water." See, also, 41 Ohio Jurisprudence, Waters and Waterworks, Sections 2 and 3, and authorities there cited.

It is a well-settled general rule, adhered to in Ohio, that, where a watercourse, well defined channel, or natural depression, exists on the land of the upper proprietor, he may collect the surface water on his land into sewers or drains and discharge it into such watercourse, natural channel or depression on his own land, without liability to the lower owner. *Nagy* v. *City of Akron,* 27 Ohio App., 250, 161 N. E., 226; *City of Hamilton* v. *Ashbrook,* 62 Ohio St., 511, 57 N. E., 239; *Mason* v. *Commrs. of Fulton County,* 80 Ohio St., 151, 88 N. E., 401, 131 Am. St. Rep., 689, 24 L. R. A. (N. S.), 903; *Ratcliffe* v. *Indian Hill Acres, Inc.,* 93 Ohio App., 231, at p. 237, 113 N. E. (2d), 30.

Appellants Wright Place and Wright complain that they cannot be sued jointly, and that a judgment rendered against them jointly is improper.

In the consideration of this complaint, we find, from the testimony of Mr. Beck, the president and principal owner of Wright Place, Inc., that the corporation had operated the bar and restaurant from 1942 onward, and had operated other parts of this business during the time set out in the petition,

and had operated the entire business since 1951, when Wright sold the land and buildings to the corporation.

Wright had operated various phases of this business at all times between the date first named in the petition—September, 1949—and 1951; and from 1951 until September, 1953, Wright had occupied the home on the east tract, from which they continued to run effluent and waste waters through a drain into the septic tank, then into the 24-inch pipe and thence onto the Bey land.

Of course, the amount of waste waters deposited by Wright on Bey land was smaller than when he operated a portion of the business; yet both Wright and Wright Place, during all of the times mentioned in the petition, did cast these waters upon lands of another. In that respect, they may be joint tort-feasors and may be jointly sued.

It is elementary, in tort actions such as this, that "where damage is caused by the joint or concurrent wrongful acts of two or more persons, each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly, or any number less than the whole number jointly, provided he has but one satisfaction." 39 Ohio Jurisprudence, Torts. Section 23, and authorities there cited.

This court has heretofore, in the unreported case of *Schindler* v. *Standard Oil Co. of Ohio*, No. 248, Medina County, decided June 20, 1956, determined that there may be a joinder of defendants in the type of action we have herein (later affirmed in 166 Ohio St., 391, 143 N. E. [2d], 133). See, also, 38 American Jurisprudence, Negligence, Section 257.

We next consider the complaint that the trial judge did not give the requested charges before argument, and that he erred in his general charge.

In so far as the four written requested charges before oral argument are concerned, they each discuss the law with respect to the rights of an upper riparian owner along a natural watercourse. In this case the swale or depression never was a watercourse or natural waterway, as that term is understood in the law in Ohio. These requested charges had no application to the facts developed in this case, and hence the trial court properly refused to present them to the jury.

Our examination of the general charge, as given by the trial court, discloses no error prejudicial to the rights of the appellants.

On the subject of the damages given by the jury, although we believe the amount awarded may be higher than the members of this court would allow if they were sitting as jurors, nevertheless, it is within the bounds of the evidence. In this day of inflated prices and the deflated value of the dollar, we cannot find that the damages are excessive.

We have examined all of the claimed errors, and find none prejudicial to the substantial rights of the appellants.

The judgment must be affirmed.

*Judgment affirmed.*

STEVENS, P. J., and DOYLE, J., concur.