Gibson, J.
The first issue for decision is the extent of liability, if any, which the defendants may have incurred by reason of installing the 72-inch storm sewer for collecting the additional surface water runoff in the Deer Creek watershed and causing it to flow upon lower lands. Although an upper-land owner cannot lawfully increase the burden on lower lands by collecting surface water and discharging it directly on such lands in larger quantities or at points other than those established by natural drainage, it is well settled that he can, without incurring liability, channel his surface water into a watercourse passing through his land, thus increasing the volume and accelerating the flow of water in the watercourse. Mason v. Commissioners of Fulton County (1909), 80 Ohio St., 151; City of Hamilton v. Ashbrook (1900), 62 Ohio St., 511; Spicer v. White Bros. Builders, Inc. (1962), 118 Ohio App., 11; Sullivan v. Board of Commissioners of Lorain County (1960), 111 Ohio App., 281; Bey v. Wright Place, Inc. (19,56), 108 Ohio App., 10; Ratcliffe v. Indian Hill Acres, Inc. (1952), 93 Ohio App., 231; Nagy v. City of Akron (1927), 27 Ohio App., 250; Aubele v. A. B. Galetovich, Inc. (I960), 83 Ohio Law Abs., 200; Oakwood *526 Club v. South Euclid (1960), 83 Ohio Law Abs., 153; Spielberger v. Twelfth Dayton Builders Corp., 76 Ohio Law Abs., 12; Persin, v. Youngstown (1949), 57 Ohio Law Abs., 560; Pontifical College v. Kleeli (1907), 5 N. P. (N. S.), 241, 18 O. D., 703; Dill v. Oglesbee, 5 N. P., 271, 8 O. D., 224; Kemper v. Widows’ Home (1881), 6 Dec. Rep., 1049; 55 Ohio Jurisprudence (2d), 232, Waters and Watercourses, Section 54; Callahan, Principles of Water Rights Law in Ohio (1959), 18, Section 47. A municipality enjoys the rights of an upper-land owner in this respect. City of Hamilton v. Ashbrook, supra; Springfield v. Spence (1883), 39 Ohio St., 665; Oakwood Club v. South Euclid, supra-, Nagy v. City of Akron, supra. The court in Nagy, however, held that a municipality may not without liability collect surface water in a storm sewer and empty it into a watercourse which does not enter, pass through, or border on the corporate limits of such municipality. There is no question that Deer Creek, which flows through Mayfield Heights, meets the requirements of a natural watercourse for the drainage of the Deer Creek watershed. It would appear that the plaintiffs never have had a right to enjoin the defendants, or any of them, from collecting surface water within the Deer Creek watershed and causing such water to be drained into Deer Creek within the city of Mayfield Heights.
Defendants assert a right to drain surface water from the portions of the Wilson Mills and Andrews Creek watersheds lying generally south of Mayfield Road into Deer Creek, by reason of the open and adverse diversion of such water for 36 years, which period is well in excess of the prescriptive period of 21 years. The plaintiffs, however, contend (1) that a prescriptive right was not acquired by the defendants because the 1925 sewer system did not discharge water into Deer Creek in sufficient quantities to cause damage to properties of lower-land owners or to increase the burden of G-ates Mills in the maintenance of its streets and bridges until the installation of the sewer under Eastgate shopping center in 1955, and, hence, a claim of adverse possession prior to 1955, could not have been entailed, and (2) that, even if a prescriptive right was gained, it was limited by the amount of such water drained through the *527 1925 tile and cannot be increased by tbe water wbicb will be drained by the 72-inch tile.
With respect to plaintiffs’ first argument, even if it be assumed that the 1925 sewer system did not discharge water into Deer Creek in sufficient quantities to cause damage to the properties of the lower-land owners, we do not believe that damage is the critical issue. See McCoy v. Rankin (1941), 35 Ohio Law Abs., 621; 93 Corpus Juris Secundum, 827, Waters, Section 127. But rather it is the diversion of surface waters from one or more watersheds into another, which is the unlawful act. See Sections 3767.13 and 3767.17, Revised Code. Clearly, in this case, the diversion from the Wilson Mills and Andrews Creek watersheds has been continuous, uninterrupted, adverse and exclusive under a claim of right for more than the prescriptive period of 21 years. The act of diversion being the unlawful act, the cause of action accrued at the moment the diverted waters were first discharged into Deer Creek. Any action for compensation for property taken without consent must be brought within the prescriptive period of 21 years. 19 Ohio Jurisprudence (2d), 715, Eminent Domain, Section 296.
The parties argue extensively various aspects of the question whether the diversion was sufficiently “open and notorious” for the raising of a prescriptive right to continue to divert the surface water of the two foreign watersheds. True, a prescriptive right cannot be acquired by secret trespass, but it is not necessary that the adverse user be actually known. Here, the sewer under Mayfield Road was literally open at its point of entrance into Deer Creek. There was nothing secret about the installation of that sewer in 1925. On the contrary, all the plans, specifications, expenditures, times of construction, and uses of intercepting sewers were matters of public record, available to everyone including the plaintiffs. Regardless of whether the plaintiffs or their predecessors in office and title fully appreciated that the sewer drained foreign watersheds, we believe that the drainage through the 1925 sewer has been of such ‘ ‘ open and notorious” character as to charge the plaintiffs with knowledge of the function served by the sewer. To impose any other standard would make it impossible to acquire a prescriptive right to drain any foreign watershed.
*528 Plaintiffs’ second argument goes to the extent of the drainage right which the defendants acquired by prescription. This argument assumes that the prescriptive right acquired is limited to carrying and discharging only a certain quantity of water in sewers that are no longer adequate to meet public needs. However, the prescriptive right acquired by defendants is one to drain a particular area rather than to drain a given quantity or volume of water. Area appears to be the best standard by which the right acquired may be defined. The quantity or volume of water drained at any time is variable, subject to many inconstant factors, such as rainfall intensity, soil saturation, perviousness of surface, and runoff characteristics. The only constant factor is the area drained.
Having acquired the right to drain certain areas of the two foreign watersheds, the defendants, as well as the inhabitants of those areas, have the right to make reasonable use of the land and to develop the same, even though the runoff of surface water may be increased and the flow of water in the sewer system may be accelerated at the point of discharge into Deer Creek. These rights would appear to be no different from those previously described concerning the use and development of lands in the Deer Creek watershed. In short, there being the right to divert the surface water from a watershed, such right extends to a diversion of all water that might run off as a result of the land being developed and put to reasonable use.
The foregoing rule would appear to be necessary if the law is to foster economic growth and development rather than to inhibit such development. Such a rule imposes no undue burden on a lower-property owner, who must be held to expect, when he acquires lands through which a natural watercourse flows, that the dominant landowners will develop their lands to their most beneficial uses and, in the promotion of those uses, will collect surface water and accelerate the flow thereof into its natural watercourses. That a lower-property owner’s right to water could be adversely affected by the growth of municipalities and the reasonable development of beneficial land uses was recognized by this court long ago in City of Canton v. Shock (1902), 66 Ohio St., 19. It must be presumed that lower-land owners purchased their lands aware of this contingency, since community growth and land development are inevitable.
*529 It should be noted that, if the right,to discharge surface, water diverted from the foreign watersheds into Deer Creek had been acquired in 1925 by condemnation proceedings, the. damages would have been fixed for all time, notwithstanding the impossibility of ascertaining at that time precisely the extent of the increased volume and accelerated flow of surface runoff water which would be drained in the future. Were this not so, a separate action would be required every time a construction occurred in the drained portion of the foreign watershed, e. g., the paving of a street, the building of a shopping center or the erection of a home. This, of course, would be an intolerable burden in a burgeoning urban economy.
In addition to the foregoing reasons for affirming the judgment of the Court of Appeals, plaintiffs clearly were guilty of laches in seeking to enjoin the completion of the 72-inch sewer here in question. The officials and residents of Gates Mills, who are the plaintiffs in this action, had been aware of the proposed construction of the new freeway and interchange in Mayfield Heights before the construction began and for over two years prior to the commencement of this action. They also were aware that there would be drainage problems involved in a construction of this type and magnitude. A large portion of the more than $800,000 in public funds invested in this sewer had been spent when this action was commenced.
For the reasons stated above, we find it unnecessary to consider the other assignments of error made by the plaintiff appellants.

Judgments affirmed.

Zimmerman, Matthias, Grieeith and Herbert, JJ., concur.
Taft, C. J., and O’Neill, J., concur in paragraphs one, two and three of the syllabus but dissent from paragraph four thereof and from the judgment.