VIAN, APPELLANT, *v*. THE SHEFFIELD BUILDING & DEVELOPMENT CO., APPELLEE.

(No. 1158—Decided June 14, 1948.)

*Messrs. Levin & Levin,* for appellant.
*Mr. Joseph A. Ujhelyi,* for appellee.

STEVENS, J. This case is before this court as an appeal on questions of law and fact, and has been submitted upon the transcript of the evidence taken in the Court of Common Pleas and upon additional evidence introduced in this court.

The petition alleges plaintiff (appellant) to be the owner of extensive and valuable property in the village of Sheffield Lake, Ohio; that defendant (appellee) is the owner of about 23 acres of ground constituting an allotment known as Colonial Gardens; that defendant has disturbed the natural drainage of its lands by reason of the construction of approximately 100 homes, and that it has constructed ditches running from its lands to the lands of plaintiff, and is discharging its surface waters upon plaintiff's lands; that the natural drainage of defendant's lands is to the east; and that by reason of the ditches which defend-

ant has created or enlarged, it has caused its surface water to flow to the west across other lands and onto plaintiff's land, flooding the same and otherwise causing damage thereto.

It is further alleged that defendant is constructing a sewage disposal plant upon its property, which plant will constitute a nuisance and depreciate the value of plaintiff's lands adjacent thereto; that defendant proposes to discharge the effluent from the sewage disposal plant into an open ditch, and thence upon plaintiff's lands and into the waters of plaintiff's bathing beach; that the sewage will pollute and contaminate the air upon plaintiff's lands, will constitute a health menace, and that it will befoul and render obnoxious the waters in plaintiff's bathing beach.

It is further asserted that the surface waters from defendant's lands flood the land upon which plaintiff's home is constructed, and that the effluent from defendant's sewage disposal plant will be discharged into the open ditch adjacent to plaintiff's home, and will render that and other property owned by plaintiff uninhabitable.

Plaintiff prays for an injunction to prevent defendant from discharging surface water or sewage onto plaintiff's lands, to enjoin defendant from proceeding with further construction of sewers or ditches for such purposes, and a mandatory injunction requiring defendant to close off the ditches and sewer already constructed, and for further relief.

For answer, defendant admits the ownership of the Colonial Gardens Subdivision, and of that part of the Lake Shore Electric right of way extending from said subdivision to Sunset Country Club No. 2 Allotment; admits the existence of the Crehore and Woodward ditches and asserts that they were created for agricul-

tural purposes; asserts that all of the drainage of its lands drains into the termination of these ditches, and that, by reason of their existence for more than seven years, they now constitute a natural watercourse; defendant then denies generally the allegations of the petition not admitted.

Plaintiff's reply admits the existence of the Woodward ditch, running north and south on the westerly line of Lakewood Beach Allotment, asserts that the ditch was established for agricultural purposes, denies that it empties into the Crehore ditch, and alleges that said ditch did not become a public watercourse because not established pursuant to the provisions of Section 6442 *et seq.*, General Code, and particularly is not within the purview of Section 6500, General Code.

Plaintiff further states that, in order to enable the Woodward ditch to empty into the Crehore ditch, or into the ravine located on plaintiff's property, it would be necessary to cross the property of the Sunset Country Club No. 2 Allotment, and that the Crehore ditch and ravine are 110 feet west of the westerly boundary of Lakewood Beach Allotment and that these properties have at all times been separately owned.

Plaintiff then states that defendant is now draining its lands westerly into a newly created ditch on the old right of way, and proposes to discharge the effluent from its sewage disposal plant into a private ditch located on the north side of the Nickel Plate right of way and has made no provision for the disposal of this effluent; that, by drainage now established by artificial means, this effluent will flow along the private railroad ditch to its point of intersection with the Woodward ditch, thence north seven-tenths of a mile to a ditch along the southerly side of the Lake Shore Electric right of way, thence westerly in a newly created ditch

110 feet from the westerly edge of Lakewood Beach Allotment to the Crehore ditch, thence upon the plaintiff's lands and northerly a distance of 110 feet in a corrugated pipe, and thence into an open ravine on plaintiff's land a distance of approximately 400 feet to Lake Erie.

Plaintiff alleges that the actions of the defendant constitute an unlawful invasion of his property and amount to a taking thereof without compensation or due process of law; that the defendant has received only conditional approval of its plans from the State Department of Health, and that the conditions were: First, that the village agree to maintain the plant; second, that the effluent be discharged into a public watercourse; that the plans submitted by defendant provide only for discharge of said effluent into an open ditch, and make no further provision for the disposal thereof; and that the village of Sheffield Lake has not agreed to maintain said plant.

The evidence as disclosed by the transcript of the evidence taken in the Court of Common Pleas and by the supplemental evidence introduced before this court, shows that:

Plaintiff for a number of years has operated a restaurant and night club on the north side of Lake Road in the village of Sheffield Lake, Ohio. Plaintiff's business property is located about three-fourths of a mile east of the easterly limits of the city of Lorain, and consists of a parcel of land approximately 1000 feet in length and 500 feet deep, running between the shore of Lake Erie on the north, and Lake Road on the south, and being bounded on the east by a deep ravine, into which the Crehore ditch empties.

Upon this parcel of land, plaintiff also has located 10 cottages, which are rented for vacation purposes during the summer season.

Extending along the entire northerly edge of plaintiff's property is a bathing beach, which is used by the patrons of plaintiff's cottages during the summer vacation period.

On the south side of Lake Road, on a parcel of land approximately 300 by 400 feet, the plaintiff has erected a new brick home. The Crehore ditch runs through the easterly edge of this property. This house is located on sublots 2 to 8, inclusive, and 38 to 47, inclusive, of Block J of Sunset Country Club No. 2 Allotment. The plaintiff is also the owner of numerous other lots in Sunset Country Club No. 2 Allotment, and in Lakewood Beach Allotment, which latter is located immediately east of Sunset Country Club No. 2 Allotment.

The Colonial Gardens Allotment is located in outlot 43, and was formerly the old Seidel property. Approximately 23 acres of the Seidel property lie south of the Lake Road and north of the Nickel Plate tracks, and 2.14 acres lie north of the Lake Road. The defendant did not purchase the portion of the Seidel property lying north of Lake Road, and obtained no easement for drainage or sewers over the northerly portion of that property.

The Crehore ditch is a county ditch, commencing in Sheffield township in the city of Lorain, which crosses the Nickel Plate tracks and enters Sheffield Lake village near the westerly line of outlot 44 and extends in a northeasterly direction to a point opposite Dillewood avenue, where it turns north and enters the ravine located on the easterly side of plaintiff's lake front property.

The Crehore ditch in Sunset Country Club No. 2 Allotment is enclosed by a corrugated metal pipe 36 inches in diameter. At the old Lake Shore Electric

right of way the duct work has been destroyed by defendant in the course of its building operations.

At its intersection with the old Lake Shore Electric right of way, the Crehore ditch is approximately 110 feet from the westerly boundary of Lakewood Beach Allotment, which allotment is located in outlot 43. Crehore ditch is thus 110 feet west of outlot 43. Lakewood Beach Allotment is located between the Colonial Gardens Allotment and Sunset Country Club No. 2 Allotment. It is approximately 360 feet in width south of Lake Road, and 410 feet in width north of Lake Road.

Lakewood Beach Allotment was formerly the Wideman farm, and Sunset Country Club No. 2 Allotment was formerly the Fannie Root farm. •

There is conflicting testimony in this transcript as to the property drained by the Crehore ditch—plaintiff's evidence tending to show that the surface waters from the Colonial Gardens Allotment drained into the Seidel farm ditch and hence along the right of way of the railroad to the north and to the east; and defendant's testimony tending to show that the surface waters from said allotment found their way into the Crehore ditch.

The defendant has dug through Lakewood Beach Drive and put a drain tile a foot or so underground, to facilitate the flow of water from said allotment to the west. Defendant has also constructed a pumping station upon the old electric right of way east of plaintiff's home, and has constructed a settling basin and two 60 by 100 open sand filter beds at the south end of Colonial Gardens Allotment, directly opposite and approximately 30 feet east of sublots 85, 86, 87, 190, 191 and 193 of Lakewood Beach Allotment, of which sublots the plaintiff is the owner of an undivided one-half interest.

The defendant has also constructed a sanitary sewer in Colonial Gardens Allotment, running north and south and then turning west at the right of way to the pumping station. From the pumping station defendant has constructed a force main extending along the right of way to the Colonial Gardens Allotment and thence south to the settling basin.

At this pumping station, defendant has constructed an overflow outlet into the Crehore ditch, and defendant proposes to discharge the raw, untreated sewage into the Crehore ditch east of the plaintiff's home, at any time when the pumping station becomes overtaxed or in disrepair. No provision has been made for a sanitary sewer pipe leading from the overflow pipe to the lake.

The effluent from the filter beds in the southwesterly portion of defendant's property is to be discharged into the ditch along the north side of the Nickel Plate right of way. The defendant's plans have made no provision for the further handling of this effluent. The evidence shows that the effluent in this ditch will flow westerly to the Woodward ditch, which is located on the westerly edge of Lakewood Beach Allotment, and thence north to the ditch on the southerly edge of the Lakewood Electric right of way; thence westerly along the newly created ditch to the Crehore ditch.

There is evidence that formerly there had been a farm ditch along the westerly line of the Seidel property, but that this ditch has been largely destroyed by the defendant's operations. Had this not been true, the effluent discharged into the Nickel Plate ditch would have returned to the Lake Shore right of way through the Seidel ditch.

The plans conditionally approved by the State Department of Health contain no provision for the ultimate discharge of the effluent from the disposal plant,

other than into the railroad ditch along the Nickel Plate right of way, which ditch is concededly railroad property and not a public watercourse. The pumping station built by the defendant is located on the right of way of the old Lake Shore Electric Railroad and is private property.

There will be odors emanating from the drainage filter beds at the southwest corner of defendant's property, and adjacent property may, and probably will, be damaged, and the value of the lands to the west thereof be reduced.

There are but two factual questions which require resolution by this court:

1. Has plaintiff shown, by the required degree of proof, that defendant is diverting and casting upon plaintiff's premises, surface water over and above the amount which would naturally flow thereon?

2. Has plaintiff shown, by requisite proof, a right to the issuance of an injunction restraining defendant from casting sewage and/or disposal plant effluent upon plaintiff's premises?

As to the first question, the evidence, both lay and expert, as to the natural flow of the surface water, is in such conflict, that the members of the court find their minds in a state of equipoise thereon. Accordingly, we must hold that, upon that question, plaintiff has not shown that he is entitled to injunctive relief.

Upon the second question, defendant contends that the ditch along the northerly side of the Nickel Plate right of way is a public watercourse, and that the discharge of the effluent from its disposal plant is therefore legally permissible.

The law of Ohio, however, seems to be clear to the effect that one may not obtain by prescription, or otherwise than by purchase, a right to cast sewage upon the lands of another without his consent. *City of*

*Bucyrus* v. *State Department of Health,* 120 Ohio St., 426, 166 N. E., 370; *State, ex rel. Neal, Dir.,* v. *Williams, Mayor,* 120 Ohio St., 432, 166 N. E., 377; *Kasch* v. *City of Akron,* 100 Ohio St., 229, 126 N. E., 61; *City of Mansfield* v. *Balliett,* 65 Ohio St., 451, 63 N. E., 86, 58 L. R. A., 628.

And this would be true even though it were attempted to be done by the village under appropriate legislation.

The evidence herein is all to the effect that the effluent from defendant's disposal system, first discharged into the open ditch along the Nickel Plate right of way, does, through natural and artificial means, find its way onto plaintiff's land; it is likewise undisputed that plaintiff has at all times, and in a timely manner, vigorously objected to such burden being placed upon his premises.

We find that such conduct by defendant, established by the requisite quantum of proof, gives rise to a situation which not only justifies, but requires, a court of equity to intervene by means of injunction.

A decree may be prepared, enjoining defendant from so discharging the effluent from its filter beds as to cause the same to be cast upon plaintiff's land, and further enjoining defendant from permitting the overflow from its sewage wet well to drain onto plaintiff's premises.

As to depreciation of the value of premises adjacent to defendant's sewage installation, we are of the opinion that an adequate remedy at law is available to the persons injured thereby, and that the situation in that connection is not such as to warrant equitable intervention by this court.

*Decree accordingly.*

DOYLE, P. J., and HUNSICKER, J., concur.