SULLIVAN ET AL., APPELLANTS, v. BOARD OF COMMISSIONERS
OF LORAIN COUNTY ET AL., APPELLEES.*

(No. 1466—Decided February 24, 1960.)

*Mr. Wayne C. Black*, for appellants.

*Mr. Paul J. Mikus*, prosecuting attorney, and *Mr. Andrew
J. Warhola*, for appellee Board of County Commissioners.

*Messrs. Christie & Hamister*, for appellee Sunrise Develop-
ment, Inc.

HUNSICKER, J.   This is an appeal on law and fact from a
judgment of the Common Pleas Court of Lorain County, which
court made certain declarations respecting the rights of the par-
ties and denied to the plaintiffs an injunction which the plain-
tiffs sought, in order to prevent a deepening and widening of a
county ditch which ran through their lands.

The petition, as filed in the Court of Common Pleas, and
which is the petition before this court, asked for, among many
things, a judgment declaring the right of the plaintiffs (appel-
lants in this court) to enjoin the ditch improvement, and such
other equitable relief to which the parties may be entitled.

The matter is submitted to this court upon the pleadings,
the evidence and the exhibits presented to the Court of Com-
mon Pleas, together with briefs and oral argument.

---

*Motion to certify the record overruled, June 8, 1960.

Counsel for the appellees (defendants below) made an oral motion that the action be dismissed as an appeal on questions of law and fact and retained as an appeal on questions of law only. Our examination of the pleadings leads us to the conclusion that the principal relief sought is an injunction to prevent the improvement of the Culver ditch, which runs through the Sullivan land. As such, the petition, liberally construed, comes within that classification of cases which, by Section 2501.02, subdivision 10, Revised Code, may be appealed on law and fact. The motion to hear the case as an appeal on law only is denied.

Counsel for the appellees then made an oral motion that the appeal be dismissed because of the failure of the appellants to follow the procedure for appeals from an administrative board or tribunal, specifically Section 6131.25, Revised Code (appeal from final order in single-county ditch procedures), and Section 2506.01 *et seq.*, Revised Code (appeals from orders of administrative officers and agencies).

It will first be noted that, under Section 2506.01, Revised Code, the appeal therein provided is not exclusive but "is in addition to any other remedy of appeal provided by law."

Although the petition herein, and much of the testimony, bears on the question "Is the improvement necessary?" as set out in Section 6131.25 (A), Revised Code; nevertheless, a fair intendment of this petition raises the question of the taking of property by a public body for private use, and hence such petition poses a problem not contemplated by the appeal section of the Single-County Ditch Act.

The motion to dismiss this action because of a failure to follow the provisions of Section 6131.25 and Section 2506.01 *et seq.*, Revised Code, is denied.

On June 11, 1954, a petition to improve Culver ditch in Lorain County, Ohio, by cleaning, straightening, deepening and widening such ditch was filed with the Board of County Commissioners of Lorain County. Grace Sullivan signed this petition, but her 10 children, each an owner of 1/15 of the land, did not sign the petition asking for the improvement. By stipulation of the parties, service of notice to the landowners is not now questioned.

Sometime in 1955, a survey was made by the county authorities, but nothing was then done to further the improvement of Culver ditch. On April 16, 1958, counsel for Sunrise Development, Inc., owner of land through which Culver ditch flows, which land is south of the Sullivan land, by letter to the Board of County Commissioners of Lorain County, made application to such board, "in the pending proposed Culver-Wallace branch ditch improvement to lower the grade in the Culver ditch to a point sufficient to provide an outlet for a storm sewer system to drain * * *" their land through the Culver ditch.

Sunrise Development, Inc., was planning an allotment with 303 lots, with the necessary paved streets, curbs, gutters and storm sewers, and proposed to have not only the surface drainage from its allotment run into Culver ditch, but also the effluent from a sewage disposal plant that was to be built on the lands of Sunrise Development, Inc., adjacent to and south of part of the Sullivan lands. Most of the Sunrise Development land is south of a narrow elevated right of way now owned by the Cleveland Electric Illuminating Company, and a part of the Sullivan land (29-plus acres) lies just to the north of this right of way.

On April 16, 1958, the Board of County Commissioners, finding everything regular and the improvement petitioned for necessary and conducive to the public welfare, granted the request of the petitioners for the improvement of Culver ditch. It then ordered the county surveyor to make the necessary survey plans, and other work looking toward accomplishing the improvement. All other action called for by statute was conducted by the commissioners looking toward the work to be done: viewing the premises, fixing damages, securing bids and letting the contract.

Counsel for the Sullivans, by letter to the Board of County Commissioners, notified the board that they proposed to file legal action to test the right of the board to enter the Sullivan lands for any purpose other than as set out in the petition as originally filed. Further, counsel said that such legal action would test the right of the board to subject the Sullivan land to a particular construction designed for the benefit of Sunrise Development, Inc., which proposed to collect and drain storm

water and other water in an unnatural manner and divert it over the Sullivan land, along with effluent from the proposed sewage disposal plant.

This action threatened by the Sullivans, when filed, caused the board to withhold the award of the contract for the Culver ditch improvement.

On March 20, 1959, a question having arisen as to proper service on the Sullivan children, the finding for the improvement was vacated; but the board retained jurisdiction of the petition for the improvement, and set another time for hearing and other action on the improvement, as required by law. Thereafter, further action was again taken by the Board of County Commissioners, looking to the work called for by the ditch-improvement petition, and the improvement was again ordered to be undertaken.

The questions raised herein are: First, May the Board of County Commissioners of Lorain County, in granting an application to improve an existing county ditch, order that such ditch improvement be so constructed that it will provide for the surface drainage of a proposed allotment to be developed along the line of that ditch, where the natural flow of water in the ditch is across the lands of other properties? And, second, May effluent from a proposed sewage disposal plant, to be erected in such allotment, and water from home sanitary facilities, be drained into such ditch, to be carried (along with the other waters emptying into this ditch) through the lands of other proprietors?

The evidence herein is that, except for the proposed Sunrise Development, Inc., improvement, the depth and width of the ditch necessary to drain the natural flow of water from the land herein need only be about half of the depth and width of the ditch made necessary by the proposed allotment. Water now flows in the Culver ditch usually only when it rains.

The evidence also indicates that this ditch has been established for such a length of time that, under Section 6131.59, Revised Code, it has become a public watercourse.

The letter sent by Sunrise Development, Inc., to the Board of County Commissioners was not a new petition, under Section 6131.04, Revised Code, and was not an amendment of the peti-

tion already on file as contemplated by Section 6131.05, Revised Code. This letter did bring to the attention of the board that, because of a proposed allotment along the course of the ditch, a deeper and wider ditch than it would otherwise make would be necessary. We do not consider that any different improvement of the ditch was necessary than that already sought through the petition to clean, widen, deepen and straighten Culver ditch.

It is clear from the evidence that this ditch was in need of the improvement sought in 1954, and the intervening years have made the ditch-cleaning and other work imperative in view of the proposed development, if surface rain water from streets and rooftops is to be channeled into Culver ditch. In addition, Sunrise Development, Inc., proposes to bring city water to this allotment, and thus put water from the sanitary facilities in those homes into the ditch. This latter sanitary water is of a kind and quantity that has never heretofore drained into Culver ditch.

In this case we are considering the rights of an upper riparian owner to discharge water into a well-defined channel, an already existing single-county ditch. This court, in *Bey* v. *Wright Place, Inc.*, 108 Ohio App., 10, at page 14, 160 N. E. (2d), 378, said:

''It is a well-settled general rule, adhered to in Ohio, that, where a watercourse, well defined channel, or natural depression, exists on the land of the upper proprietor, he may collect the surface water on his land into sewers or drains and discharge it into such watercourse, natural channel or depression of his own land, without liability to the lower owner. *Nagy* v. *City of Akron*, 27 Ohio App., 250, 161 N. E., 226; *City of Hamilton* v. *Ashbrook*, 62 Ohio St., 511, 57 N. E., 239; *Mason* v. *Commrs. of Fulton County*, 80 Ohio St., 151, 88 N. E., 401, 131 Am. St. Rep., 689, 24 L. R. A. (N. S.), 903; *Ratcliffe* v. *Indian Hill Acres, Inc.*, 93 Ohio App., 231, at p. 237, 113 N. E. (2d), 30.''

In that case, the depression or swale over which the natural flow of surface water passed was not an established watercourse, as we have in the instant case.

To say that an owner of land may never improve such land or develop it to its highest and best use without being sub-

ject to a claim for damages or injunction, by reason of the resulting natural increase in the flow of water into a watercourse, such as we have herein, is to take a position that would prevent the progress that results from a growing industrial and commercial area. A lower riparian owner, along a watercourse, must expect that, as the upper lands are built up with homes and stores, much of the water which was absorbed by the land will now run off of hard-surfaced streets and the roofs of buildings, to seek its natural outlet in the channel developed with the contour of the land.

The court, in *Ratcliffe* v. *Indian Hill Acres, Inc.*, 93 Ohio App., 231, at page 237, 113 N. E. (2d), 30, said:

"In the exercise of the rights of ownership, one of the usual and reasonable activities is the control and disposition of surface water and the facilitation of its final discharge in accordance with the contour of the watershed, and so long as no unreasonable or negligent act is committed by the owner of the dominant estate, the servient estate has no cause of action, notwithstanding he may suffer some incidental damage or his burden be somewhat increased."

It is the situation, as above stated, that we have herein. The action of the Board of County Commissioners of Lorain County was not improper or unlawful when it, upon information that an allotment was to be developed along Culver ditch, decided to improve such ditch to acommodate the increased flow of natural water resulting from the homes that will be built in that allotment.

Hereinbefore we have only discussed the question of the accelerated flow of surface waters which will result because of the proposed allotment. There remains the problem of effluent and waste water from sanitary and kitchen facilities, which water it is alleged will be water furnished this allotment by the neighboring city of Elyria, and which water would not naturally fall upon, arise on or be drained from, the lands herein.

We have no evidence that such waste water or effluent would be offensive, dangerous or polluted. What might occur in the future is not for our present consideration. What we do have before us is the question whether a proposed sewage disposal plant, whose waters are not natural to the area, may cast

its water, after treatment, into a natural drainage ditch on its own lands, which ditch then flows through the lands of another to its natural outlet.

It is interesting to note here that the Legislature in 1957 enacted an amendment of Section 6131.01, Revised Code, and included in that amendment the following definition of benefits.

Section 6131.01 (G), Revised Code:

" 'Benefits' include any or all of the following factors:

"(1) Elimination or reduction of damage from flood;

"(2) Removal of water conditions that jeopardize public health, safety, or welfare;

"(3) Increased value of land resulting from the improvement;

"(4) Use of water for irrigation, storage, regulation of stream flow, soil conservation, water supply, or any other purpose incidental thereto;

"(5) Providing an outlet for the accelerated run-off from artificial drainage whenever the stream, watercourse, channel, or ditch under improvement is called upon to discharge functions for which it was not designed by nature; it being the legislative intent that uplands which have been removed from their natural state by deforestation, cultivation, artificial drainage, urban development or other man-made causes, shall be considered as benefited by an improvement required to dispose of the accelerated flow of water from said uplands."

It may also be here noted that damages have been awarded the Sullivans for the injury which the board found will be caused them by reason of the increased width and depth of the ditch. No appeal from that order was taken.

There is no question in the mind of this court that the rule announced in *Vian* v. *Sheffield Bldg. & Development Co.*, 85 Ohio App., 191, 88 N. E. (2d), 410, is a correct statement of the law as it presently exists in Ohio.

In that case, however, the natural flow was not determined by the court. The rule stated applied to sewage and effluent which the court in that case found to be odorous. The ditch into which the effluent and sewage passed was not a watercourse, but a private ditch on railroad property, from which ditch it passed into another ditch, and then onto the property of the complainant, Vian.

In the instant case there is no disposal plant on these premises, there are no homes built thereon, and there are no streets on the lands that it is alleged will some day be an allotment with homes and streets. It may be that some method other than a sewage disposal system emptying into this ditch will be built. Courts are not established to discuss what might be if something does occur, but to decide issues based, not upon conjecture, but fact.

It has always been the rule that the one who produces sewage must care for it, and he cannot cast it, or permit it to find its way, upon the property of his neighbor, to the neighbor's injury. *City of Mansfield* v. *Bristor,* 76 Ohio St., 270, 81 N. E., 631, 118 Am. St. Rep., 852, 10 L. R. A. (N. S.), 806. If it should develop that sewage does enter the Culver ditch, by reason of the acts of Sunrise Development, Inc., the right to seek an injunction, or other relief, for such acts, can then be presented to the proper tribunal. If the waters of this ditch become contaminated by reason of the acts of upper riparian owners, the courts will grant appropriate relief to the injured parties.

The Board of County Commissioners had before it a valid petition to clean, widen, deepen and straighten Culver ditch. It proceeded to grant the petition and order the work to be done. In this it acted within the powers granted to it by Section 6131.01 *et seq.,* Revised Code.

This court determines that, in the respects hereinabove set out, the Board of County Commissioners is proceeding in a lawful manner in fixing the depth and width of Culver ditch, so as to receive the increased flow of water made necessary by the proposed allotment.

A decree may be entered accordingly, with exceptions to appellants.

*Decree for the appellees.*

DOYLE, P. J., and STEVENS, J., concur.