SPICER ET AL., APPELLEES, *v.* WHITE BROS. BUILDERS, INC., APPELLANT.

(No. 1218—Decided June 28, 1962.)

*Mr. Howard Everett,* for appellees.
*Mr. Walter L. White,* for appellant.

*Per Curiam.* This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Allen County, enjoining White Brothers Builders, Inc., from "draining water or septic tank affluent (*sic*) or sewerage from * * * [Southwood subdivisions numbers 1 and 2] * * * onto or across the lands of plaintiffs, Charles J. Spicer, Ida Mae Spicer, Hazel F. Custer and Sarah E. McCaslin" and ordering such corporation "to correct the drainage in said subdivisions so that

said drainage flows south and so that said drainage will continue south across the Adgate road and into the Berryman ditch and to disconnect any tiles from the road tile along the north side of Adgate road," and enjoining said corporation from "discharging any sewerage or septic tank affluent (*sic*) into the ravine along the north side of said additions."

The action was by the above named plaintiffs and one Alice T. Cary against the corporation and certain individuals, successors in title to the corporation to a number of building lots in the subdivision. The trial court found that plaintiff Cary failed to introduce any evidence supporting the averments relating to her and denied the injunction as to her. Although the plea of the amended petition prayed for an injunction against all the defendants, the trial court ordered that no injunction issue directed against the defendant individuals.

The appeal was tried *de novo* on the transcript of the evidence adduced before the trial court. However, since White Brothers Builders, Inc., is the only appellant and since no appeal has been perfected by Cary as to the order denying relief to her, or by any of the other plaintiffs with respect to the trial court's not granting relief against the defendant individuals, this court will confine its opinion and judgment to the issues raised by and between the plaintiffs, other than Cary, and the defendant corporation.

It is undisputed that plaintiff Custer is the owner of a five-acre tract of land on the north side of Adgate road; that plaintiff McCaslin is the owner of a five-acre tract lying immediately east of the land owned by Custer; that plaintiffs Spicer are the owners of a twenty-nine acre tract in the shape of a squared-U, lying west, north, and east of the Custer and McCaslin properties and abutting at each end of the U on the north side of Adgate road; and that to the west of the lands owned by the plaintiffs lies a tract of land of approximately 18.17 acres originally owned, subdivided and developed by defendant corporation and provided with water piped thereto from the city of Lima. The west portion of this land, consisting of about 5.63 acres, was platted in June 1956 as Southwood Subdivision, and the surface water and effluent, if any, from filter beds connected to septic tanks on the building lots in the subdivision, drains through a tile drain in a southerly direction to a catch basin at

the south end of the subdivision. Although at least one of the plaintiffs claimed that some of this drainage emptied into a tile which then carried it in an easterly direction along the north side of Adgate road and onto his property, the only evidence actually tracing the complete route of this drainage was that from the catch basin it drained south across Adgate road into an existing ditch in the natural watershed which then emptied into the Ottawa river. The land east of Southwood Subdivision (No. 1), consisting of about 12.54 acres, was subdivided and platted in July 1957 into 39 building lots as Southwood Subdivision No. 2.

Southwood Subdivision No. 2 and the southerly portions of each of the tracts owned by plaintiffs are located on a shelf of land which descends abruptly to the east of the subdivision and to the north of plaintiffs' lands to the original valley created by the Ottawa river. The greater part of the land belonging to each of the plaintiffs consists of bottom lands of the river valley. The existing Ottawa river channel runs along the easterly portion of the Spicer land and in times of very heavy rains, followed by fast runoff, the river overflows onto these bottom lands. The original channel of the Ottawa river cut westerly from its present channel toward the base of the shelf, southerly and thence easterly close to and paralleling the base of the shelf where it again joined the channel as now located. The original river bed is principally on the land of Spicers but cuts across the most northerly portions of the lands of Custer and McCaslin. Through a river straightening project of more than 50 years past the river was removed from its original channel and confined to its present channel. There is no evidence as to whether this project was public or private, as to the manner in which it was accomplished, or as to whether any drainage rights were terminated and compensation or damages paid therefor.

Defendant corporation constructed drains from the building lots in Southwood Subdivision No. 2. One drain carrying surface water and filter bed effluent, if any, runs from two or three southernmost lots to a catch basin on the north side of Adgate road, which is drained in an easterly direction across the south end of the properties of plaintiffs by two tiles, one a five-inch tile installed by a contractor when a gas line was also installed, and the other an eight-inch tile installed by the town-

ship trustees, ostensibly for road drainage. The southernmost lots drain directly into one of these tiles. To provide for surface drainage and the drainage of effluent, if any, from filter beds connected to septic tanks on the remaining 36 lots of the subdivision, the defendant constructed another drain which runs in a northerly direction to the north end of the subdivision, where it empties into a ravine. This ravine runs through property of a district tuberculosis hospital and then emerges into the old bed of the Ottawa river hereinbefore mentioned. Most of the surface drainage and any drainage there might be from septic tanks and filter beds of some 105, or more, building lots located in nearby Berryman Addition, and some drainage from the lands of the district tuberculosis hospital also flows into this ravine.

A contour map of Southwood Subdivision No. 2 shows, and it was testified, that of the 36 lots now draining north, surface water from some 17½ lots would not normally drain in this direction but the natural watershed would carry such drainage therefrom in a southerly and southwesterly direction. Surface water on the remaining building lots now draining into the northerly drain would, except for such drain, either drain easterly across the lands of plaintiffs or northerly into the ravine from where it would be carried to the lands of plaintiffs. There is no topographical map in evidence showing the contours of the lands adjoining Southwood Subdivision No. 2 on which to base a more positive conclusion as to the eventual true course of the drainage from this subdivision.

Plaintiffs claim and produced evidence tending to show that since defendant corporation has subdivided and developed its lands they have had more water than usual in and adjoining the old river bed; that, although the bed formerly became dry in the summer, it now continuously stands with water; that, although the eastern end of the old river bed could once be farmed, it is now too wet to farm; that the water in the old river bed has a "filthy" odor; and that, although milk cattle were once raised by some of the plaintiffs and drank water from the old river bed, Custer testified that "we can't have milk cows because they couldn't drink that water." Spicer testified that he still has "grazing cattle." Spicer testified also that the "board of health came out there and looked," "about seven years ago,"

because "we didn't care for the water, it got kind of bad," and that it was coming "from the T. B. hospital and Berryman Addition." There was no evidence showing that any of the water on the lands of plaintiffs was, in fact, polluted, nor was there any testimony that any raw human waste was coming into the ravine from Southwood Subdivision No. 2, although there was some evidence that this was the case with respect to the drainage from Berryman Addition. McCaslin testified that he never had seen the White Brothers outlet into the ravine and that he could not testify from personal knowledge as to whether the water causing his problem was coming from there. Custer testified that he had inspected the outlet; that during a rain it flowed so fast that he couldn't hold a bucket to it; and that the water has an odor, but he did not describe the odor. Spicer testified that he had examined the White Brothers drain on the Saturday before trial and that it was then flowing at the rate of one gallon per minute. There was no evidence that any of the plaintiffs had actually lost any crops, once planted, any cattle, or suffered any loss, injury, or damage, directly attributable and traceable to the drain into the ravine, except to the extent that the mere failure of the old river bed to dry out and, by reason thereof, the incidental wetness of adjoining lands would constitute damage, injury or loss.

Custer testified that he had constructed a pond on his wife's property; that water overflowing during storms from the tile crossing the southerly part thereof and catch basins thereon had washed out soil in several places and the dam containing the pond; and that it would probably cost $3,000 to put the pond back in shape. He testified also as to wetness around the foundation of his home due to the same overflow.

On this state of facts the only issue now before us is whether defendant corporation should be enjoined from continuing to drain the subdivisions in the manner in which they now drain. In determining this issue we ignore any subordinate issues which might exist as to whether the defendant has continuing responsibility for or any continuing authority to control the drainage of the subdivisions.

Plaintiffs rely primarily on the cases of *Vian* v. *Sheffield Building & Development Co.*, 85 Ohio App., 191, and *Bey* v. *Wright Place, Inc.*, 108 Ohio App., 10, decided by the Court of

Appeals of the Ninth Appellate District in 1948 and 1956, respectively. The syllabus of the former case reads as follows:

"1. One may not obtain by prescription, or otherwise than by purchase, a right to cast sewage upon the lands of another without his consent.

"2. The discharge of effluent, from a disposal system, into a public watercourse, from which, through natural and artificial means, it finds its way onto the lands of another, and the permitting of overflow from a sewage wet well to drain onto the lands of another, may be enjoined."

In the latter case, the opinion was written by Judge Hunsicker and the following is the pertinent portion of the syllabus:

"Where a watercourse, well defined channel, or natural depression, exists on the land of an upper proprietor, he may collect the surface water on his land into sewers or drains and discharge it into such watercourse, natural channel or depression on his own land, without liability to the lower owner. Additional water which has been pumped from deep wells, then used for toilets, washrooms, restaurant, and other business uses, is not a part of the surface water which a lower owner must accept from the owner of higher ground."

The latter of these two cases followed the law of the former and the former relied heavily with respect to the matter of sewage upon the cases of *City of Bucyrus* v. *State Department of Health*, 120 Ohio St., 426; *State, ex rel. Neal, Dir.,* v. *Williams, Mayor*, 120 Ohio St., 432; *Kasch* v. *City of Akron*, 100 Ohio St., 229; and *City of Mansfield* v. *Balliett*, 65 Ohio St., 451. It is true that these cited cases stand for the general proposition that one may not obtain by prescription, or otherwise than by purchase, a right to cast sewage upon the lands of another without his consent. However, an examination of each of these cases, and the cases upon which they are based, reveals that there must be a showing of damages or of "substantial injury." Indeed, in a somewhat parallel situation where an upper owner of land on a running stream had no reasonable means of disposing of salt water from his oil well operations except to discharge it into the stream where it made the water unfit for consumption by livestock of the lower owner and destructive of the grass with which it came into contact the Supreme Court of Ohio held in the case of *Straight* v. *Hover*, 79 Ohio St., 263, that "in cases

of this character where the invasion of the rights of the lower proprietor does not amount to an appropriation of his property, but merely constitutes a nuisance, *an injunction will not be allowed* to prevent the development of the resources of the lands of the upper owner, but that an action will lie for the recovery of such substantial damages as the lower proprietor may sustain by reason of such operations.'' (Emphasis added.)

In the case of *Ratcliffe* v. *Indian Hill Acres, Inc.,* 93 Ohio App., 231, decided by the Court of Appeals of the First Appellate District in 1952, it was observed by Judge Matthews, at page 237, that:

''In the exercise of the rights of ownership, one of the usual and reasonable activities is the control and disposition of surface water and the facilitation of its final discharge in accordance with the contour of the watershed, *and so long as no unreasonable or negligent act is committed by the owner of the dominant estate, the servient estate has no cause of action, notwithstanding he may suffer some incidental damage or his burden be somewhat increased.*'' (Emphasis added.)

Subsequent to the decisions of the Court of Appeals of the Ninth Appellate District, hereinbefore mentioned, upon which plaintiffs place reliance, Judge Hunsicker wrote three opinions, concurred in by his associates, in cases decided by that court on February 24, 1960, and by the Court of Appeals of the Eighth Appellate District on March 16, 1960, and March 29, 1960, respectively, *Sullivan* v. *Board of Commissioners of Lorain County,* 111 Ohio App., 281 (motion to certify overruled, June 8, 1960); *Aubele* v. *A. B. Galetovich, Inc.,* 83 Ohio Law Abs., 200, and *Oakwood Club* v. *City of South Euclid,* 83 Ohio Law Abs., 153. Each of these cases recognizes the principle that in actions of this nature some consideration must be given to progress. The following paragraph appears identically in the opinions of both the *Sullivan* and the *Aubele* cases:

''To say that an owner of land may never improve such lands or develop it to its highest and best use without being subject to a claim for damages or injunction, by reason of the resulting natural increase in the flow of water into a watercourse, such as we have herein, is to take a position that would prevent the progress that results from a growing industrial and commercial area. A lower riparian owner, along a watercourse,

must expect that, as the upper lands are built up with homes and stores, much of the water which was absorbed by the land will now run off of hard-surfaced streets and the roofs of buildings, to seek its natural outlet in the channel developed with the contour of the land.''

In each of these three cases, on the individual facts thereof, injunctions were denied to the lower proprietors. In the *Sullivan case*, city water was to be piped to a proposed allotment of 303 lots and the drainage was to include surface water as well as effluent from a sewage disposal plant; in the *Aubele case*, the drainage included surface water and effluent from septic tanks, a few acres of the land involved were not originally in the drainage area, and there was insufficient proof that the drainage, in fact, was polluted; and in the *Oakwood Club case*, as much as 15 per cent of the drainage may have been from other watersheds. One case involved drainage into a ditch, another into a natural watercourse, and the third from municipal storm sewers into a watercourse. Each recognizes the principle of *damnum absque injuria*, that no relief may be granted without proof of injury, and we follow, with approval, the law expressed by these three decisions.

The preponderance of the evidence being that the drainage from Southwood Subdivision No. 1 is carried south across Adgate road into a ditch in the natural watershed and not onto or across the lands of plaintiffs, an injunction relating to the drainage of such subdivision is denied and judgment in such respect is for the defendant.

With relation to the southerly three lots of Southwood Subdivision No. 2, the only evidence is that these lots drain in the same direction in which they have always drained and there is no proof by a preponderance of the evidence that the accumulation of water around the foundation of the Custer home and the washout of soil results from any drainage except that to which the Custer land, as the lower land, has always been subservient. Were it also not for the construction of the dam and pool by Custer there would have been no interruption of the natural drainage and no consequential washout of the dam. In this latter respect Custer cannot complain of damages resulting from his own act. See *Ratcliffe* v. *Indian Hill Acres, Inc.* (93 Ohio App., 231), *supra.*

A preponderance of the evidence shows that the surface water draining into the ravine from the north end of Southwood Subdivision No. 2 consists, with minor exception, of water which normally would have drained onto or across the lands of plaintiffs. Defendant corporation has merely collected this water and emptied it into the natural watercourse. The fact that such drainage, together with other water draining therein, fills the old river bed is not due to any act of the defendant. Except by reason of the stream straightening project of some fifty years past, this water would drain away with the running stream, would not collect in a stagnant pool, and would not cause any inconvenience or distress to the plaintiffs. In the absence of evidence offered by plaintiffs, who had the burden of proof, to show that the stream straightening project was accomplished in such manner as to terminate the rights of the upper land owners to drain into the natural watercourse which in turn drained into the old river bed, we must conclude that such rights were not terminated.

With regard to the effluent, if any, although it appears that the filter beds from the septic tanks of the homes in Southwood Subdivision No. 2 are connected to the respective drains, there is no evidence whatsoever that any polluted effluent actually flows from these drains. The purpose of a septic tank and filter bed is to purify sewage and to prevent pollution, and there is no evidence that there has been any failure in this regard, and due to percolation into the soil there is sometimes no run off from filterbeds. Although one of the plaintiffs described the smell of the pool in the old river bed as being "filthy," there is no evidence whatsoever that the pool was actually polluted or, if polluted, that such pollution resulted from drainage from Southwood Subdivision No. 2. On the other hand, the evidence was plentiful, including positive testimony of one of the plaintiffs, that at least some of the condition objected to by plaintiffs had existed in the old river bed for as much as five years before Southwood Subdivision No. 2 was ever developed.

There was likewise no evidence showing that effluent actually drained with the surface water drainage onto or across the southerly portions of the lands of plaintiffs and no evidence showing any pollution of the water which did drain over this portion of these lands.

On this state of the law, applied to the various facts and circumstances of this case, we must deny the injunction prayed for and render judgment for the defendant, White Brothers Builders, Inc. As was stated in the *Aubele case, supra,* the defendant is not absolved by this action. The difficulty is that the plaintiffs have failed to establish their claims by that degree of proof necessary to warrant this court to order the injunctive relief sought by plaintiffs.

*Judgment accordingly.*

GUERNSEY, P. J., MIDDLETON and YOUNGER, JJ., concur.